*Eustis* for the plaintiffs, *Watts & Lobdell* for the defendant.

---

## SHEPHERD vs. PERCY.*

4ns267
48 1084

APPEAL from the court of the first district.

MARTIN, J., delivered the opinion of the court. The plaintiff states that he became purchaser at auction of a plantation and slaves, the common property of the syndics of

An agent appointed to superintend the sale at auction of an insolvent's estate cannot become the purchaser.

---

* This opinion was delivered in June term, 1825, but the decision of the cause was suspended by an application for a re-hearing.

SHEPHERD
vs.
PERCY.

Tricou & Son for one half, and the defendant and others for the other half: the defendant and five others being interested each for one seventh, and two others for one fourteenth part each of the said half; the sale having taken place under an agreement between the above parties, under their private signatures, but recorded and deposited in the office of a notary public, by which agreement commissioners were appointed to advertise and superintend the sale, after having made an inventory of the property, prepare the deeds to be executed by the parties, receive the consideration and divide it among them.

The petition further sets forth, that the premises were accordingly struck off to the plaintiff for $143,500, payable $10,000 in cash, and the rest in six equal annual instalments, whereupon he paid $10,000 in cash, and deposited his notes for the balance, one hundred and sixty-nine in number, satisfactorily endorsed, with the notary, and the deed of sale having been drawn by the notary, under the directions of the commissioners, was signed by all the parties, except the defendant, who absolutely refused, and his co-proprietors after having signed, took their

respective proportions, as well of the cash as of the notes aforesaid, which were secured by a mortgage on the property; that the defendant's share of the nett proceeds, as stated by the commissioners amounts to $10,036 in cash and notes, the latter endorsed by Millaudon.

The petition concludes with a prayer that the sheriff may be directed to receive the said sum of money and notes from the notary, and make a legal tender of them to the defendant, and that the same, if refused, may remain at the risk and costs of the defendant, that the plaintiff may be declared exonorated from the payment, &c.

The answer admits the defendant to be the owner of the seventh part of one half of the premises, but denies the other facts alledged in the petition.

It avers that the agreements there stated, are irregular, insufficient and void, entered into by parties without competent authority; that they have not been faithfully executed by several of the parties, particularly by Millaudon, as the plaintiff well knew; that the pretended sale is a contrivance between the plaintiff and Millaudon, to defraud the defendant, and is false, fraudulent, simulated and

void, and the plaintiff has not *bona fide* purchased the premises for himself, but for Millaudon, by whose arts and those of the plaintiff, the premises have been prevented to be sold for the sum of $250,000.

In answer to interrogatories put by the defendant, the plaintiff declared that the premisses being put at auction, in a single lot, were on the 12th of April, 1824, struck off to him alone ; that the deed of sale was executed to him alone, that he personally paid the $10,000 in cash, and executed his own notes according to the terms of the sale; that he still holds the premises in his own name, but there is an understanding between him and Millaudon, as to the interest which the latter is to have in the premises, in consequence of which, he has, with the permission of the plaintiff assumed the superintendance of the premises, and the interest of the plaintiff therein cannot cease till all the notes by him given to the defendant for the price are paid.

The answer being excepted to as insufficient and evasive, the plaintiff in an amended answer declared he did not purchase for his own and sole account, but for that of Millaudon, and the title was made in his own name,

and he will hold it till all the notes he gave are taken up and paid, or he is secured; after which Millaudon will be entitled to a conveyance.

There was judgment for the plaintiff, and the defendant appealed.

The auctioneer, introduced as a witness by the plaintiff, deposed, that he advertised that the premises would be sold on the 12th of April, and that the sale would begin at noon precisely, and continue till two o'clock, when they would be struck off to the last bidder; that accordingly he began to cry at noon precisely, and continued till two, when he asked leave from the commissioners appointed to superintend the sale, to cry for five minutes longer to which they assented. Accordingly, five minutes thereafter, he struck off the property to the plaintiff, the highest bidder.

Henderson, one of the commissioners, introduced by the defendant, deposed, that he refused to sign the deed of sale of the premises to the plaintiff, because he believed that a sale which had been made of it by the sheriff was valid. He was determined to oppose any sale, in which the premises did not

(VOL. IV. N. S.) 35

East'n. District.
February 1826.

SHEPHERD
vs.
PERCY.

bring the price, at which they had been sold by the sheriff, viz. $235,000. He was present when the commissioners attempted a sale of the premises in January, 1824, at auction, $150,000 were then bid for them, at least more was then bid than when they were adjudged to the plaintiff in April following. He, as one of the commissioners opposed the sale of the premises in January, at the price then offered as it did not reach that offered at the sheriff's sale. He thinks it would have been more advantageous to sell on the premises, or at least to have brought the slaves to the city. All the commissioners and the parties interested, were of opinion that a sufficient price was not offered in January. He would have given more than the price then offered for the plantation and slaves, and had he wanted, and been prepared to buy a plantation in April, he would have given more than the price at which it was adjudged to the plaintiff. At the sheriff's sale he offered $80,000 for the plantation alone. He had no interest in the sale, and acted solely from what he conceived his duty as one of the commissioners.

Lafitte deposed to the defendant's refusal to sign the deed.

East'n. District.
*February* 1826.

SHEPHERD
*vs.*
PERCY.

The appellee contends that the appellant has no real interest in the cause, as he purchased, not for his own account but for that of Millaudon; that Millaudon, as he was one of the agents of the sellers, and the principal one, could not fairly purchase that property.

The district judge was of opinion that the evidence does not place the plaintiff in the situation of Millaudon's agent, that he is personally bound, and is at most only conditionally bound, to convey to Millaudon.

On this part of the case we think the judge erred. We believe from the evidence, and the reluctant manner in which the plaintiff has answered the interrogatories, adds much to the belief, that Millaudon is the actual purchaser, and that the plaintiff consented to lend his name to enable Millaudon indirectly to do, what they believed he could not, or ought not to do directly.

The district judge has concluded that a sale to Millaudon would have been good, because the agreement, under which he was appointed a commissioner, takes the case out of the policy and reason of the law, which forbids agents to purchase the property of their principals; that the principals had so limited

SHEPHERD
*vs.*
PERCY.

his agency that he could not possibly defraud them; the hour at which the auctioneer was to strike off the property was fixed, and Millaudon could not quicken or slacken time.

It is in the evidence that, although the time could not be quickened nor slackened, the auctioneer conceived himself so much under the orders of the commissioners, as to ask their leave to cry the property a little longer.

Chabaud, Millaudon, and Henderson, or *either* of them, were to make all necessary dispositions, to advertise and superintend the sale, prepare the deeds, &c. and the commissioners of the creditors of Tricou & Son, or a majority of them, jointly with Millaudon, (who, in this instance, represented alone his employers) were the judges of the solvability of the makers and endorsers of the notes offered.

Henderson, one of the commissioners, refused his assent to the sale. It is not shown that Chabaud interfered, and Millaudon was empowered to act alone. In passing on the notes offered, neither Chabaud nor Henderson, could have any agency.

We think the judge erred in concluding that Millaudon's agency was so limited, that he could not defraud his employers.

At the sheriff's sale $235,000 were bid, *i. e.* $90,000 more than the price at which the plaintiff, or rather Millaudon, purchased.— Henderson, Millaudon's colleague, was of opinion the property should not be sold for less. Had not Millaudon, in determining to become the purchaser, placed his duty and his interest at variance, it is not unlikely that the former would have prevailed, and the property, the sale of which he had pledged himself to superintend for the benefit of the concerned, would not have been sacrificed.

Millaudon having the power of acting alone on the trust, had in our opinion, an immense latitude, and if disposed to avail himself, had his employer's interests perfectly at command.

A sale of a property exceeding in value $200,000, when put up in block, must find a purchaser within a very limited circle; 119 slaves sold individually, and exhibited to the bidders, may perhaps, bring a higher price than when put up in a lot.

Millaudon had the advantage over other bidders, that on the part of his employers, at least, there would be no very rigid inquiry, in the solvability of the maker, or endorser of the notes, he might offer if he pur-

East'n. District.
*February* 1826.

SHEPHERD
*vs.*
PERCY.

chased. For of this, he was the only judge. He offered himself as an endorser, and we think that whatever may be his solvability, he had no authority to sit in judgment on it.

Perhaps as he was joined to two other individuals, one of whom dissented from the sale, and either had a power to act alone, he might have declined to act and purchased at a sale superintended by the third alone.—— This third person, Chabaud, does not appear to have acted; but if he had, he could not have given perfection to the sale ; for he was not authorised to judge of the solvabilities of the persons, whose names were on the notes offered. As to this, the defendant, and his co-proprietors had given no authority to any one but Millaudon.—*Cur. Phil. Com. Terr, Factores. Pothier Vente. no.* 13; *Civil Code,* 349, *art.* 14. *Harrod & al.* vs. *Norris' heirs,* 11 *Martin,* 297.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided, and reversed, and that there be judgment for the defendant, with costs in both courts.

*Grymes & Seghers* for the plaintiff, *Denis* for the defendant.